Thank you, Your Honor. I am Richard Martinez, and I'm appearing on behalf of Mr. Melcher, Ms. Salcido, and Ms. Torres. And with the Court's permission, Your Honor, I would like to spend seven minutes in this portion and reserve three minutes. At the outset, let me say that in the recent case of Nelson v. Davis, Your Honor, which you participated, it was noted that the Court – this Court cannot affirm a summary judgment if there's a genuine issue of material fact because credibility determinations that weigh in of the evidence and drawing legitimate inferences from the facts are jury functions, not those of a judge. And in this case, Your Honor, what has occurred is in order to reach a decision on summary judgment, it would in fact require violating of those strictures. In this case, Your Honor, there are two claims. For Ms. Salcido and Ms. Torres, there was the First Amendment claims. And in the First Amendment claims, we apply the Elkwood Energy Savers – Energy Savers format in terms of the analysis. And that issue was just the third prong. The question of whether or not there was evidence, or sufficient evidence, that the case of Ms. Salcido or Ms. Torres was a substantial factor in their termination. In making that decision, the Court in air failed to understand that evidence of proximity in time alone is sufficient to establish causation. And in the case of Ms. Salcido, we have a period of 11 months. And in the case of Ms. Torres, it's a period of three years. But as in Elkwood Energy, as in CoalSTAR, this Court has written, that the time period is not to be applied mechanically. Eleven months is certainly within an acceptable time frame. And the factors that are of significance in this case are twofold. One is that we had a counsel majority. In fact, all seven unanimous of the Fuentes-Reydal Group had just come into office. This was the very first meeting of this group. So this is, if you're looking at the time factor, it has to be in the context of this is their first opportunity to act, this is their first opportunity to punish, to retaliate. Secondly, is that the city manager, or city administrator, had just been in office approximately 14 days. And she, as she's testified to, initiated the resolution at issue 563 because it was at the insistence of the mayor at the time, Ms. Fuentes. So she's the initiator of it. And in addition to that, briefly, with respect to the evidence for Ms. Salcida and Ms. Torres, it goes far beyond just the issue of timing or proximity in time to the retaliation with respect to their First Amendment conduct. I have, with respect to each of them, what I call a knowledge-plus analysis that I'd like to briefly offer. When you look at the various council members who voted, you look to Council Member Bernal, who makes the motion to terminate, and this is an action that results in the elimination of six positions. I apologize, Your Honor. Let me more correctly state that it was a motion to pass the resolution, which would then result in the elimination of six positions. It would change and do away with some departments, modify others, and in addition to that, these jobs would be terminated. That was a part of the resolution, Your Honor. I do agree with that characterization. And in making that motion, Council Member Bernal had actually voiced publicly his displeasure with Ms. Salcida for having been the plaintiff in the lawsuit that she had filed against her candidate for mayor. The year before, in July, she filed as a resident of the city of San Luis and as an elector there, a challenge to the legitimacy of her candidacy. That action was successful, and Ms. Rydell was stricken from the ballot because she was not deemed to be a resident, therefore not eligible to run. Mayor Fuentes then runs as a write-in candidate and wins, but at that time, there's only three votes for their group. With respect to Ms. Rydell, she's just coming on to the Council. This is her first meeting on that June 9th meeting. With respect to Mayor Fuentes, she had been there and voiced historically her opposition to Ms. Salcida, but had also engaged in a number of conducts, including setting in motion that the resolution would occur, having spoken with Ms. Cordova about she had a list of people that she wanted to be rid of, also being at the hearing and circulating or providing an affidavit in support of Ms. Rydell. For Council Member Varela, again, she was equally active in the process. She had knowledge, she had participated, she'd given testimony at the prior hearing eliminating Ms. Rydell as a candidate. She had, as she said, been with her friend and signed an affidavit and been very supportive. For Council Member Luna, who seconds the motion for the passage of Resolution 563, he had also signed an affidavit and had stated that he was well aware that there had been numerous times when Ms. Fuentes had said that Ms. Salcida would be fired upon their having the power to do that, meaning the majority. And for Council Member Concha, she, too, was at the hearing. She, too, had submitted an affidavit. She was considered a close friend. And in Council Member Concha, while it goes more to the issue of Ms. Torres, you know, she makes a fundamental admission on behalf of all of them when she says, you know, we eliminated a department in order to get at one person, which is what she says about Ms. Torres. We eliminated Ms. getting rid of the Economic Development Department in order to be rid of Ms. Torres. With respect to Ms. Torres, we have similar findings for Rydell, Concha, Fuentes, Luna, Bernal, and Varela. So they were all intimately involved and had a major part in this. With respect to the issue of Bogan, which I would like to address briefly, Judge. You are down to about three minutes if you want to reserve some time. But why don't you hit Bogan first, and then whatever you want to reserve, you can reserve. Okay, Your Honor. I will try to be very brief in my Bogan comment. Okay. And, Judge, as you know, in Betcher, you are a member of that court, so you've dealt with Bogan before. And let me just say that with respect to the key issues here is do we have ad hoc decision-making or do we have policymaking? Is this limited to a few people or does it apply class-wide? This is an ad hoc decision. It applies only to five people. It applies to departments, which have been done away with. There's more to it than just people. That was a result. But there is a reorganization petition. I understand what you're saying, Judge Wallace, but I think there is a fundamental difference. I think that here everyone, all the council members are very aware of who is affected by this. And in addition to that, Your Honor, you will note that at Ms. Rydell's insistence, she makes an exception for one of them, and when the others request also for application of the layoff policy, they are all denied a transfer or an alternative position. So I do believe that there is substantial evidence that it was specific and that it was particularized. I would like to reserve a couple minutes, Your Honor, so with that I will stop. I have re-argumented this time. Lawyer from the city. Good morning, Your Honor. May it please the Court, I'm Justin Pierce on behalf of the City of San Luis and the individual defendants in this case. In 1992, the United States Supreme Court in the Collins v. City of Harker Heights case said that decisions concerning the allocation of resources to individual programs such as sewer maintenance or to particular aspects of those programs, such as the training and compensation of employees, involve a host of policy choices that must be made by locally local judges interpreting the basic charter of government for the entire country. What the appellants in this case are essentially asking this Court to do is ignore that and their argument is based almost entirely on this counsel shouldn't have done what they did. These were good people doing good jobs, but that decision is left entirely to the legislature. But that really isn't their argument. Their argument is that what you claim happened was just a facade for getting at people. That is, it was in nature an effort to fire, retaliate against certain people. That's right, Judge Wallace. That's the essence of the claim, which is a claim. They certainly could not have passed an ordinance to retaliate against somebody because they had exercised some First Amendment right. The problem is the evidence that they're allegedly relying on, much of which is not supported by the record, is that this wasn't done in the course of a budget process. Of course it was. This was just a sham, but there's no evidence of that. The District Court went through person by person to make that determination. But really that's the question. Either it's a sham and pretext, in which case the claims have a case, or it's legislative and they don't. Either way, we're not going to sit and substitute our judgment for the counsel. The question is whether they've had a legal claim or not. And that's absolutely right, Your Honor. And so what we're left with is basically four issues. One, are these people, the individuals, are they legislatively immune for the decision that they've made? Number two, was there some due process violation during the course of these proceedings? Number three, is there evidence that a reasonable jury could determine that the city, assuming legislative immunity, I'll get to that, sorry, that the city, as a final policymaker, not an individual, the city retaliated against, number one, Ms. Salcedo because a year earlier she had filed a lawsuit against one of the members of the council. Not a damages lawsuit, just a lawsuit claiming that, hey, wait, she's not eligible to be on the ballot for mayor. And the fourth issue is regarding Ms. Torres. And the question simply is, is there evidence that the city retaliated against her because three years earlier she spoke up in a meeting in favor of then city administrator, city manager, Mr. Ruiz. That's number one. And number two is, did they do it, which infringed on her ability to associate with her mother, who had been also a member of the council. I'll briefly hit on number one, which is the legislative immunity issue. And the reason I want to briefly hit on it, Your Honors, is this case is a textbook case for legislative immunity. There is no distinguishing this case from Bogan and the Ninth Circuit's four-part test, which hinges on, number one, whether the decision was ad hoc decision making or whether it was a policy decision. Here, there can really be no question that a reorganization of the way a small city does business, eliminating departments, moving functions to other departments, is a policy choice going forward that, at least over the next couple of years, during this council's term, during this city administrator's term, that didn't change. So, yes. Roberts. Mr. Pierce, you argued that very well in your brief. Suppose that this really was a legislative act, and if that's so, that these people would have legislative immunity, the individuals. Now, there's still the claim against the city. So immunity of the individuals would not preclude the suit against the city. That's an interesting question, Judge Thompson, because we dropped a footnote to preserve the argument that the district judge didn't agree with us on and is certainly not dispositive of our case. Whether or not the city is immune, we believe that the evidence is that they can't be held liable based on the evidence. But as I've looked at the cases, it would be an issue of first impression for this court, but where a decision focuses or, I'm sorry, where a resolution, a law of some sort, is not discriminatory on its face. In other words, you've got to get to the motives of the people in order to determine why this legislation was passed. The problem that we have is that there's strong law across all the circuits and in the U.S. Supreme Court that there's a privilege that attaches. You're not supposed to be able to bring in these legislators and haul them before courts and ask them about their motives. So the question is, and in fact, if – No, you can haul them in, but they aren't individually – there's an individual privilege, and liability doesn't attach to the individuals. But collectively, it's a whole different matter. Well, and that's the issue that we raise as a matter of first impression. And in looking at the Bogan oral arguments, actually, we saw that several of the justices had this similar question and realized the quandary, which is, well, if we recognize a privilege, which we do, that they can't be hauled into court, it's one thing to pass a resolution that says the city will no longer employ African-Americans. On its face, that's a discriminatory resolution. Or they pass a resolution which has the effect of segregating the schools. So on its face, it's not discriminatory, but it has the effect of segregating schools. It's going to – you can challenge that. There's not going to be immunity. But where the question focuses entirely on the motive of the legislators, we – our position is that of Judge Hall's in the Fourth Circuit case we cited in our briefs, which is that immunity should also attach to the city. Now, we present that as an argument because we think that that should – that's the correct legal analysis of it, but it certainly is not dispositive of – in this case. And the reason for that is, obviously, as we look at the two claims, basically the First Amendment claim of Ms. Salcido and the First Amendment claim of Ms. Torres, as the district court did, when you go line by line and person by person, you can't even find a majority of this counsel that even knew that Ms. Torres spoke three years earlier in favor of the – of the then current – a then city administrator. Is there any argument that the city is relieved of liability because a disinterested, unknowing majority voted to pass this reorganization plan? That's right. Under Section 1983, Your Honor, as the Court is aware, there's no respondeat superior argument. It's got to be a final policymaker. Well, the case law is pretty clear that no one member of that counsel – if one member of that counsel votes because they want to retaliate against Ms. Salcido or Ms. Torres, but six members vote because, well, the city administrator made a good case here for us, and we're going to save $300,000, and then that one motive doesn't impute the entire city. So it's not – Then get you, I guess, down to the First Amendment claim, which was against the individuals. Is that correct? The First Amendment claim was against the city. And to the extent it was against the individuals, that's where we've said that legislative immunity precludes them from being held liable. But in addition to that, Your Honor, there's a causation issue because – Well, I mean, that's your argument for the city, isn't it, causation? It's our argument for the city and it's an argument – Well, right. But, I mean, you're relying on legislative immunity primarily on the individuals. Primarily – yes, Your Honor. Primarily for the individuals, legislative immunity. But the reality is, even if they weren't legislatively immune, which they are, but let's assume for a second that they're not, and the question is, if I – I'm a counsel member and I'm going to retaliate against somebody, I'm going to vote, you know, to eliminate their position. And, again, as Judge Wallace indicated, it wasn't just to eliminate a position. It was an overhaul of what the city government was going to do. But if I do that and I vote in favor of the resolution because I'm going to do that, if six members of the counsel are voting for other reasons, there's no causation as to the First Amendment issue. In addition – That's what Judge Campbell found. There was no nexus. As he saw, there was no nexus between the First Amendment issue and any retaliation. That's right, Your Honor. And that's what you're talking about here. Yes, Your Honor. And that was a quick ten minutes. My time is expiring. But we ask the Court to affirm Judge Campbell's decision and uphold summary judgment in favor of the city and the individuals. Thank you. Thank you, counsel. You have about a minute or so left for rebuttal. If I may very briefly, Your Honor, just touch on a couple quick points. I'd like to point out to the Court that in Bogan, Justice Thomas wrote that what appears to be legislation, and that was also in an appointment case, was also conditioned on having some kind of prospective application. Here, there's no prospective application. There was no need for any cutbacks. There was no need – you know, they were adding employees. The budget was growing. They were giving raises. They were doing everything. In fact, all of the employees were replaced by new persons carrying out the same functions. So I don't believe that, you know, you don't get to motive. You just look at is this legislation. And for the same reason, we believe the due process was – there's a due process violation, because in Rhea, what the Court says is that where you have an arbitrary or rational legislation, then due process still attaches and there's a claim that can be made. And last, Your Honor, with respect to the First Amendment, fundamental error on the part of Judge Campbell is that even if you just look at the timing, the proximity in time, that alone establishes causation, and he just failed to recognize that that's the law of the circuit. And in this case, we would ask you to correct this and to allow these plaintiffs to go to trial. Thank you. Thank you very much. Thank you both for your arguments. And the case, as heard, will be submitted. The next case on the oral argument calendar this morning is Ganley v. County of San Mateo.
judges: Wallace, Thompson, Thomas